**OZ TECHNOLOGY INCORPORATED,
Petitioner,**

v.

**ENVIRONMENTAL PROTECTION
AGENCY, Respondent.**

Nos. 95–1538 and 96–1393.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 2, 1997.

Decided Nov. 21, 1997.

David H. Leroy argued the cause for petitioner, with whom Charles B. Lempesis was on the briefs.

Michael J. Zevenbergen, Trial Attorney, U.S. Department of Justice, argued the cause for respondent, with whom Lois J. Schiffer, Assistant Attorney General, Karen L. Egbert, Attorney, and Jan M. Tierney, Attorney, Environmental Protection Agency, were on the brief.

Before: EDWARDS, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

Section 612(c) of the Clean Air Act ("CAA" or "Act") instructs the Administrator of the Environmental Protection Agency ("EPA" or "agency") to promulgate rules that prohibit the replacement of ozone-depleting compounds with substances "which [she] determines may present adverse effects to human health or the environment." 42 U.S.C. § 7671k(c) (1994). In the instant case, EPA designated Petitioner OZ Technology Inc.'s ("OZ") product HC–12a as an unacceptable substitute for CFC–12 (an ozone-depleting substance commonly known as "freon") for end-uses other than industrial process refrigeration. 60 Fed.Reg. 31,092, 31,098 (1995). In so doing, EPA effectively banned HC–12a for those end-uses. See 40 C.F.R. § 82.174 (1996). Subsequently, EPA rejected a request by OZ, filed pursuant to regulations implementing section 612(d) of the Act, seeking to remove HC–12a from the list of unacceptable substitutes and add it to the list of acceptable substitutes. 61 Fed.Reg. 51,018 (1996). OZ then petitioned for review, challenging EPA's initial decision to put HC–12a on the unacceptable list and the agency's subsequent refusal to amend the list.

On the record at hand, we must reject the petition for review. As EPA found, OZ failed in this case to submit valid data supporting its claim that HC–12a should be added to the list of acceptable substitutes. In light of OZ's acknowledgment that HC–12a was flammable, and EPA's previous decision prohibiting a very similar compound manufactured by OZ for the same end-uses, EPA's actions banning HC–12a reasonably satisfied its obligation under section 612 to reduce overall risk to human health and the environment.

## I. BACKGROUND

### A. The Statutory and Regulatory Regime

Title VI of the CAA, as amended in 1990, requires the phase-out of CFC–12 and other

substances that have the capability of depleting the stratospheric ozone layer. 42 U.S.C. §§ 7671–7671q (1994). Section 612 of the Act instructs EPA to regulate replacement substances to reduce overall risk to human health and the environment. 42 U.S.C. § 7671k(c). Section 612(c) requires EPA to publish a list of the substitutes prohibited for specific uses and a list of the substitutes that are safe alternatives for specific uses. *Id.* Section 612(d) of the Act grants any person the right to petition EPA to add a substance or to delete a substance from either of the lists published pursuant to section 612(c). 42 U.S.C. § 7671k(d).

EPA promulgated regulations to implement section 612, known as the Significant New Alternatives Policy ("SNAP") program. 59 Fed.Reg. 13,044, 13,147 (1994) (codified at 40 C.F.R. pt. 82). Under the SNAP program, any person who has developed a substitute for an ozone-depleting substance must notify EPA before introducing the substitute into interstate commerce. 40 C.F.R. § 82.176(a). The person must submit information concerning, among other things, the likely end-uses and flammability of the proposed substitute. *Id.* § 82.178(a)(3), (9). With respect to flammability, the submitter must provide the flash point and flammability limits of the product, as well as information on the procedures used for determining the flammability limits. *Id.* § 82.178(a)(9). If a substitute is flammable, "the submitter must analyze the risk of fire resulting from the use of [the] substitute and assess the effectiveness of measures to minimize such risk." *Id.* "For substitutes that will be used in consumer applications, documentation of testing results conducted by independent laboratories should be submitted, where available." *Id.*

Once the information submitted to EPA is "adequate to support analysis of the submission," *id.* § 82.180(a)(3), the agency decides, based on the information submitted and any other information available to EPA, whether the substitute is acceptable, unacceptable, or acceptable subject to certain use restrictions for the proposed end-uses. *Id.* § 82.180(b). Where EPA proposes to list a substitute as unacceptable for certain end-uses, EPA follows notice-and-comment rulemaking proce-

dures. *Id.* § 82.180(a)(8)(ii). If EPA then determines that a substitute is unacceptable for a specific end-use, the SNAP program prohibits replacing ozone-depleting substances with the substitute proposed for that end-use. *Id.* § 82.174(b)-(d). Under section 612(d) of the Act, any person may petition EPA to amend existing listing decisions or to add a new substance to any of the SNAP lists. *Id.* § 82.184.

**B. EPA's Designation of HC–12a as Unacceptable**

OZ has developed a substance called HC–12a as a substitute for CFC–12. HC–12a has end-use applications in refrigeration and air conditioning, including motor vehicle air conditioning systems and household refrigerators and freezers. In March 1994, OZ began marketing HC–12a. Petitioner's Br. at 13. Soon thereafter, EPA informed OZ that it was required under SNAP to submit a notice of intent to introduce HC–12a into interstate commerce. *Id.* at 14. OZ sent documentation to EPA in a purported effort to comply with the SNAP notice requirement. Joint Appendix ("J.A.")853–76. In September 1994, however, EPA formally proposed to list HC–12a (identified as Hydrocarbon Blend B) as an unacceptable substitute for CFC–12 for end-uses other than industrial process refrigeration. 59 Fed.Reg. 49,108, 49,112 (1994).

OZ subsequently submitted comments to EPA, along with documentation to initiate a petition under section 612(d). The gist of OZ's position was that EPA should delete HC–12a from the "proposed unacceptable" list and add it to the list of acceptable substitutes. Because EPA had not promulgated a final rule on HC–12a, the documentation submitted by OZ to support a 612(d) petition was accepted as an additional comment on the proposal. *See* EPA's Supplemental Response To Comments On The Proposal To Find HC–12a Unacceptable, July 18, 1996 ("July 1996 Decision Doc."), J.A. 766. Later in the comment period, other documents concerning the flammability risks of HC–12a were submitted to EPA, either by OZ or by other parties on its behalf. *See* Letter from Charles B. Lempesis to EPA, June 5, 1995,

J.A. 897–99 (listing submissions); Attachment to Letter from EPA to OZ, August 30, 1996 ("August 1996 Decision Doc."), J.A. 784 (identifying additional submissions). On June 13, 1995, EPA took final action listing HC–12a as an unacceptable substitute for end-uses other than industrial process refrigeration, citing concern about flammability. 60 Fed.Reg. at 31,098.

Prior to the action on HC–12a, EPA had designated as unacceptable a very similar product of OZ, namely OZ–12. OZ–12 (identified as Hydrocarbon Blend A) was included on the unacceptable list because of concerns over flammability and the lack of an adequate risk assessment showing that OZ–12 could be used in end-uses other than industrial process refrigeration. 59 Fed.Reg. 13,-044, 13,082, 13,122–24 (1994). In processing the application for OZ–12, EPA officials explained to OZ, in at least one meeting, four letters, and a phone conversation, what was required in a valid risk assessment. J.A. 811–15, 819–20, 825–26.

EPA's decision to designate HC–12a as unacceptable coincided with the agency's rejection of a section 612(d) petition submitted by OZ for OZ–12, requesting that EPA delete OZ–12 from the unacceptable list and add it to the acceptable list. 60 Fed.Reg. 49,407 (1995). On July 25, 1995, EPA wrote a letter to OZ stating that the company's submissions regarding the flammability risks of HC–12a were inadequate for the same reasons that the company's submissions for OZ–12 were inadequate. J.A. 770. In an attachment to another letter which EPA sent to OZ that same day, EPA explained at length why the company's submissions regarding the flammability risks of OZ–12 were insufficient to warrant listing the compound as an acceptable substitute. Response to OZ Technology, Inc. Petition To Find OZ–12 Acceptable ("July 1995 Decision Doc."), J.A. 772–79. EPA's communications with OZ in July 1995 did not explain why additional documentation submitted by OZ for HC–12a but not for OZ–12 also was insufficient to warrant listing HC–12a as acceptable.

On August 14, 1995, OZ petitioned the United States Court of Appeals for the Ninth Circuit for judicial review of EPA's June 13, 1995 action listing HC–12a as an unacceptable substitute. The petition was transferred to this court, which granted EPA's motion to remand the administrative record. See Order Granting Motion for Voluntary Remand of the Record (Apr. 23, 1996). During the remand period, EPA addressed some of the documentation that had been submitted by OZ for HC–12a but not for OZ–12. See July 1996 Decision Doc., J.A. 766–69 (addressing Exhibits T through Z of OZ's November 1994, section 612(d) petition for HC–12a).

### C. EPA's Denial of OZ's Section 612(d) Petition Regarding HC–12a

In December 1995, after OZ sought judicial review of EPA's final rule designating HC–12a as an unacceptable substitute, OZ submitted another petition to the agency pursuant to section 612(d), requesting that EPA list HC–12a as acceptable. ("1995 Petition"). EPA rejected the 1995 Petition, 61 Fed.Reg. 51,018 (1996), and issued a full response to the many documents submitted by OZ covering HC–12a. See August 1996 Decision Doc., J.A. 784–810. EPA concluded that OZ had not submitted a "scientifically valid, comprehensive risk assessment" that would justify changing the designation of HC–12a from unacceptable to acceptable. EPA Letter, August 1996, J.A. 780. OZ petitioned for judicial review of this determination, and this court granted the parties' joint motion to consolidate the two petitions for review. See Order Granting Joint Motion to Consolidate (Oct. 29, 1996).

### II. DISCUSSION

This court may grant a petition challenging an action of EPA under section 612 of the Act if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 7607(d)(9)(A) (1994). This provision commands essentially the same standard of review as the analogous provision contained in the Administrative Procedure Act, 5 U.S.C. § 706 (1994). Ethyl Corp. v. EPA, 51 F.3d 1053, 1064 (D.C.Cir. 1995). And, as the Supreme Court has made clear, the arbitrary and capricious standard has certain clear parameters:

The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given. We will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983) (citations and footnote omitted). It is also well understood that "[t]he rationale for deference is particularly strong when the EPA is evaluating scientific data within its technical expertise." *International Fabricare Inst. v. U.S. E.P.A.,* 972 F.2d 384, 389 (D.C.Cir.1992).

■ OZ contends that EPA acted arbitrarily and capriciously in initially designating HC–12a as an unacceptable substitute for CFC–12 for all end-uses other than industrial process refrigeration, and in rejecting OZ's 1995 Petition. Petitioner's Br. at 24. According to OZ, EPA's decision was contrary to the documentation submitted in support of HC–12a. *Id.* at 24–25. OZ also argues that EPA acted unlawfully in failing to provide guidance on the kind of data or risk analysis that the company was required to submit, beyond the documentation that was offered,

in order for EPA to decide that HC–12a was safe under the CAA. *Id.* at 26–28.

EPA responds that OZ had the burden of demonstrating through a scientifically valid risk analysis that HC–12a did not pose unacceptable flammability risks under CAA section 612(c). EPA also asserts that it reasonably determined that OZ failed to submit an adequate risk analysis, and that the agency therefore justifiably declined to decide whether the risks posed by HC–12a in fact were acceptable under the Act. Respondent's Br. at 16–22. We substantially agree with EPA on both counts. Given OZ's acknowledgment that its product is flammable, as well as EPA's mandate to regulate under section 612 to reduce overall risk to human health, EPA's actions with respect to HC–12a were reasonable.

Documents submitted on behalf of OZ to EPA recognized the flammability of HC–12a. *See* Draft Test Protocol—Phase I, J.A. 886 ("OZ ... produces a propane-based flammable refrigerant designated as HC–12a."). Moreover, before considering OZ's submissions for HC–12a, EPA already had designated a very similar compound, OZ–12, as unacceptable because of flammability concerns. Given these circumstances, OZ was required to submit data on HC–12a, analyzing "the risk of fire resulting from the use of such a substitute and assess[ing] the effectiveness of measures to minimize such risk." 40 C.F.R. §§ 82.178(a)(9), 82.184(c). The regulations make it clear that EPA was fully justified in rejecting OZ's section 612(d) petition when the company failed to supply adequate data to support that petition:

> If the petition is inadequately supported, the Agency will query the petitioner to fill any data gaps before the 90–day review period begins, *or may deny the petition because data are inadequate.*

*Id.* § 82.184(d)(4) (emphasis added).

■ OZ claims that EPA was obligated to conduct its own tests on HC–12a before determining that it was unacceptable for OZ's intended end-uses. This position finds no support in the statute. OZ sought to introduce into the market a product with *known risks* to human health and the environment.

In light of the statutory mandate of section 612, it is hardly surprising that EPA's regulations require the company to submit data defining the risk and assessing the effectiveness of measures to minimize the known dangers.

■ Arguably, during the proceedings involving OZ's products, EPA officials could have been more forthcoming in responding to OZ's requests for clarification on the contents of the required documentation. However, it is clear from the record that EPA stated in no uncertain terms that OZ was obligated to quantify data on the flammability of HC–12a, and to use scientifically valid studies, in order to enable the agency to consider listing the compound as an acceptable substitute for all end-uses. *See, e.g.,* July 1995 Decision Doc., J.A. 772–79. Moreover, OZ was put on notice of the requirement of a comprehensive risk analysis, as well as the contents of such an analysis, from the company's prior efforts to have the agency designate OZ–12 an acceptable substitute. EPA officials met with OZ about OZ–12, J.A. 811–13, and sent several letters to OZ outlining the contents of a risk analysis. *Id.* at 811–15, 819–20, 825–26. For particular proposed end-uses for OZ–12, EPA referred OZ to testing guidelines produced by the Society of Automotive Engineers, which the agency stated were acceptable. *Id.* at 811, 814. Thus, EPA did not leave OZ completely without direction.

In addition, a private consultant recommended to OZ the contents of what might have constituted an acceptable risk analysis for OZ–12. Letter from Bryant Consulting to Gary Lindgren, President, OZ Technology, Inc., October 12, 1993, J.A. 816. OZ conceded at oral argument that it did not undertake the procedures recommended by the consultant and did not ask EPA whether the recommended risk analysis would suffice to allow the agency to make an affirmative decision about any of its products under SNAP and the CAA. Although OZ may at times have felt stonewalled by EPA, OZ had only itself to blame for not pursuing leads offered by EPA officials and the outside consultant.

Thus, the principal focus of our inquiry is on EPA's contention that it reasonably determined that OZ failed to submit a valid risk analysis of HC–12a. During the course of its dealings with OZ, EPA produced three documents that, in increasing detail, explained why the data submitted by OZ were insufficient. *See* July 1995 Decision Doc., J.A. 772–79; July 1996 Decision Doc., J.A. 766–69; August 1996 Decision Doc., J.A. 780–810. For example, EPA pointed out that OZ's submissions analyzed refrigerants that were less flammable than HC–12a, or used a smaller charge of refrigerant than would be used in actual practice, or both, J.A. 773, 791; that the submissions failed to analyze all of the risks posed by the end-uses in question, *id.* at 773, 790–91; and that the submissions failed to quantify risks at all, or attempted to do so with unrealistically low assumptions unsupported by empirical data. *Id.* at 776–78, 795, 805–06.

Given the comprehensive scope of EPA's responses to OZ's submissions and OZ's utter lack of explanation as to how EPA's responses might be inaccurate or unfounded, we hold that EPA's determination that OZ failed to carry its burden under SNAP was justified. *See Ethyl Corp.,* 51 F.3d at 1059 (holding, under another provision of the CAA, that "[t]here is no doubt that [EPA] has the authority to make the factual determination of whether an applicant has submitted enough data ... to satisfy the applicable standards, and a reviewing court must respect this role") (citing *Ethyl Corp. v. EPA,* 541 F.2d 1, 36–37 (D.C.Cir.1976) (en banc)). Under the circumstances in this case, EPA was not required to render an affirmative decision that HC–12a was either safe or unsafe under the Act. It was enough for the agency to find that the company had failed to address the known risk of flammability in a scientifically valid, comprehensive risk analysis.

In short, we hold that EPA did not act arbitrarily and capriciously in designating Petitioner's product HC–12a an unacceptable substitute to CFC–12 for end-uses other than industrial process refrigeration under CAA section 612(c) and SNAP. We also hold that EPA did not act arbitrarily and capriciously in rejecting Petitioner's subsequent request under CAA section 612(d) and SNAP to re-

move HC–12a from the unacceptable list for the above-mentioned end-uses and add the compound to the acceptable list.

### III. CONCLUSION

For the reasons discussed above, OZ's petitions for review are denied.

*So ordered.*